IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:09-HC-2056-BO

| | | |
|---|---|---|
| MICHELLE CATHERINE THEER, | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | O R D E R |
| | ) | |
| ANNE HARVEY, | ) | |
| Respondent. | ) | |

Michelle Catherine Theer petitioned this court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Before the court is respondent's motion for summary judgment. (D.E. # 8) Petitioner timely responded to the pending motion. (D.E. # 13) Thereafter, respondent filed a reply. (D.E. # 14) The matter is ripe for disposition.

## Procedural Background

On December 3, 2004, following a jury trial in the Superior Court of Cumberland County, petitioner was found guilty of first-degree murder and conspiracy to commit first-degree murder of her husband, United States Air Force Captain Frank Martin Theer. (D.E. 9, Mem in Supp., Ex. 1 at 114, 117-20). Petitioner was sentenced to life without the possibility of parole for the murder conviction and a consecutive sentence of 157 to 198 months of imprisonment for the conspiracy conviction. (Id. at 117 and 119) J. Kirk Osborn and Elsie Miller represented petitioner at her trial. (Id. at 3)

Petitioner appealed as of right to the North Carolina Court of Appeals. On January 16, 2007, the Court Appeals found no error in petitioner's criminal judgments. State v. Theer, 181 N.C. App. 349, 639 S.E.2d 655 (2007) (Mem. in Supp., opinion attached at Ex. 4) In this appeal, Daniel R. Pollitt represented petitioner. (Id., Ex. 2 at 50) On February 20, 2007, a notice of appeal to the North Carolina Supreme Court was filed through the same counsel, Daniel R. Pollitt. (Id., Ex. 5, Notice of appeal and State's Motion to Dismiss) On October 11, 2007, the

North Carolina Supreme Court dismissed the appeal. State v. Theer, 361 N.C. 702, 653 S.E.2d 159 (Oct. 11, 2007) (unpublished order).

Petitioner next filed, through Mr. Pollitt and North Carolina Appellate Defender Staples Hughes, a petition for writ of certiorari in the United States Supreme Court seeking review of the North Carolina Court of Appeals' opinion. (D.E. # 9, at Ex. 7)) On May 19, 2008, the United States Supreme Court denied the petition for writ of certiorari. On July 28, 2008, the Court denied petitioner's petition for rehearing. Theer v. North Carolina, 128 S. Ct. 2473 (May 19, 2008) (unpublished order attached at Ex. 10), reh'g denied, 129 S. Ct. 10 (July 28, 2008).

Petitioner signed this 28 U.S.C. § 2254 petition on May 6, 2009, and it was filed the same date. Theer is proceeding pro se in the habeas corpus petition now before this court.

Factual Statement

The North Carolina Court of Appeals summarized the facts from petitioner's trial as follows:

> [T]he Theers married in 1991 and subsequently lived in several different states as Captain Theer was stationed at Air Force bases around the country. In 1999, the couple moved to Fayetteville, where Captain Theer was posted on Pope Air Force Base and Defendant was employed by psychologist Thomas Harbin, as she worked toward getting her own permanent license as a psychologist. Throughout this time, Captain Theer was often deployed overseas and away from home for long stretches of time, and the marriage struggled.
>
> In early 2000, Defendant met United States Army Sergeant John Diamond, a Special Forces soldier stationed in Fayetteville at Fort Bragg, via the Internet and began an extramarital affair with him. In June 2000, Defendant rented her own apartment and lived separately from Captain Theer; the two started marital counseling in July while also going through a trial separation. In October, Defendant reconciled with Captain Theer, moving back into their home and telling Dr. Harbin that she planned to end her affair with Sergeant Diamond. In November, Sergeant Diamond sent e-mails to Defendant indicating he was unhappy about the possibility of their relationship ending and Defendant's remaining with her husband. On 9 December 2000, Defendant met and engaged in sexual relations with Sergeant Diamond in

Raleigh, after telling Captain Theer she was going there to celebrate her birthday with a graduate school classmate.

On 17 December 2000, Defendant and Captain Theer traveled from Fayetteville to Cary with Dr. Harbin, his wife, and another couple, for a dinner to celebrate the holidays. Around 9:00 or 9:30 p.m., as the group prepared to leave the restaurant, Defendant went to the restroom and made a cell phone call to Sergeant Diamond, who was watching a video with his estranged wife and mother-in-law. After the phone call, Sergeant Diamond put on cold-weather clothing and left the house.

Meanwhile, Defendant and Captain Theer took the other couple back to Dr. Harbin's office in Fayetteville, where they had left their car, arriving around 10:30 p.m. Thereafter, Defendant and her husband left the parking lot but returned approximately ten to fifteen minutes later after Defendant "remembered that she needed a reference book from her office to prepare for two book reports . . . due the next day." Defendant later told the police that Captain Theer waited outside while she went inside Dr. Harbin's office to get the books. Shortly thereafter, she heard gunshots, ran outside, and found Captain Theer, unresponsive, at the bottom of the steps outside of the building. Defendant stated that because she had accidentally locked her keys inside the building when she went outside, she ran to a late-night video store about a block away to get help. Captain Theer died as a result of five gunshot wounds, including one fired at close range just behind his left ear.

Following Captain Theer's death, Defendant continued her relationship with Sergeant Diamond, including taking a trip to Florida together. Police later linked Sergeant Diamond to a semiautomatic pistol that was of the same model used to kill Captain Theer. However, after Sergeant Diamond learned that the police wanted to obtain the pistol for ballistics testing, he reported that his vehicle had been broken into on base and the weapon stolen.

As a result of his statements regarding the pistol, military authorities charged Sergeant Diamond with making a false official statement, false swearing, and obstruction of justice. Around 20 February 2001, he was placed into pre-trial confinement at a military facility Sergeant Diamond was later charged with and convicted by a General Court-Martial of murder and conspiracy to commit murder in the death of Captain Theer and sentenced to life in prison without parole. On 21 May 2002, Defendant was indicted for first-degree murder and conspiracy to commit first-degree murder in the death of Captain Theer. However, around the date of the indictment, Defendant, who had moved to New Orleans since the murder, left from there, reportedly to "start a new life." She moved to Florida, where she rented an apartment and had plastic surgery performed under an assumed name. Files and documents found in her Florida apartment indicated Defendant had a long-range plan to create several false identities and essentially to "disappear."

Police located and arrested Defendant in August 2002, and her trial began on
27 September 2004.

Theer, 181 N.C. App. at 353-54, 639 S.E.2d at 658-59.

## Issues

Petitioner asserts three claims: (1) the State's use of petitioner's pretrial, post-Miranda exercise of her rights to silence and counsel as substantive evidence of guilt violated Doyle v. Ohio, and the Fifth Amendment; (2) the State's use of petitioner's pretrial, pre-Miranda exercise of her rights to silence and counsel as substantive evidence of her guilt violated Baxter v. Palmigiano and the Fifth Amendment; and (3) Petitioner's "short-form" indictment does not allege first-degree murder or support first-degree murder in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

## Discussion

A.  Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The court's review of Theer's claims is governed by 28 U.S.C. § 2254(d) which provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). A state court decision "involve[s] an unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. The factual findings of the state court are presumed to be correct. 28 U.S.C. § 2254(e)(1). The petitioner bears the burden of rebutting this presumption by clear and convincing evidence. Id.

B. Review of Claims

i. The State's use of petitioner's pretrial, post-Miranda exercise of her rights to silence and counsel as substantive evidence of guilt violated Doyle v. Ohio, and the Fifth Amendment; and the State's use of petitioner's pretrial, pre-Miranda exercise of her rights to silence and counsel as substantive evidence of her guilt violated Baxter v. Palmigiano and the Fifth Amendment.

The court shall address the first two issues together. The court thus turns to the issue of Fifth Amendment violations arising out of petitioner's exercise of her right to silence and counsel. Respondent argues the claims are procedurally defaulted. Although questions of procedural-bar are usually addressed first, the court finds it is in the interest of judicial economy to exercise its discretion and proceed directly to the merits of the claims. See Lambrix v. Singletary, 520 U.S. 518 (1997); Bacon v. Lee, 225 F.3d 470, 477 (4th Cir. 2000).

Comment on the refusal to testify at trial violates a defendant's Fifth Amendment right against self-incrimination. Miranda v. Arizona, 384 469 (1966) and Griffin v. California, 380 U.S. 609, 615 (1965) (holding "that the Fifth Amendment ... forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt."). The state is also prohibited from using the silence as evidence of guilt. Wainwright v.

Greenfield, 4747 U.S. 284, 292 (1986). On direct appeal the North Carolina Court of Appeals held as follows:

> Defendant also contends that she is entitled to a new trial because the trial court committed plain and ex mero motu error by allowing State evidence and argument about her exercise of her constitutional rights to silence and counsel. We disagree.
>
> Defendant points to a number of instances in which the State made reference at trial to her "pre-trial exercise of her constitutional rights to silence and counsel." It is telling that she refers to this "pre- trial exercise," as the references are all to instances in which a witness testified to Defendant's invocation of her rights to counsel and to remain silent prior to being arrested herself. Witnesses such as police and Army investigators and Defendant's boss testified as to her lack of cooperation with the police during the investigation of her husband's murder; the prosecutor's closing argument likewise referred to her reaction to invoke her right to counsel when Sergeant Diamond was arrested. None of these situations was custodial such that her Fifth and Sixth Amendment rights to counsel and to remain silent would have attached. See Miranda v. Arizona, 384 U.S. 436, 444, 86 S. Ct. 1602, 1612, 16 L.Ed.2d 694, 706 (1966); Kirby v. Illinois, 406 U.S. 682, 688, 92 S. Ct. 1877, 1881-82, 32 L.Ed.2d 411, 417 (1972) (plurality); State v. Phipps, 331 N.C. 427, 441, 418 S.E.2d 178, 185 (1992).
>
> None of the four cases cited by Defendant nor those found by this Court in its review of this argument have awarded a defendant a new trial on the basis of references at trial to the defendant's right to remain silent and right to counsel prior to being arrested or to being in custodial interrogation. See also Jenkins v. Anderson, 447 U.S. 231, 238, 100 S.Ct. 2124, 2129, 65 L.Ed.2d 86, 94-95 (1980) ("We conclude that the Fifth Amendment is not violated by the use of prearrest silence to impeach a criminal defendant's credibility."); State v. Lane, 301 N.C. 382, 384-85, 271 S.E.2d 273, 275 (1980) (distinguishing between impermissible references to the decision to remain silent after arrest and allowable references to silence prior to arrest). We decline to do so now. We hold that this assignment of error is without merit.

Theer, 181 N.C. App., 370-71.

During trial, defense counsel did not object to the testimony at issue. Given the fact no contemporaneous objection was made, appellate counsel sought plain error review from the North Carolina Court of Appeals. Id. The issue was raised on direct appeal and in the notice of appeal file in the North Carolina Supreme Court. (See D.E. # 9, Ex. 8, Notice of Appeal to the

Supreme Court of North Carolina, Notice of Question 4, p. 12) In both instances, the claim was dismissed. The state court's decision was neither contrary to, nor an unreasonable application of, clearly established federal law, thus requiring federal habeas relief. See Williams v. Taylor, 529 U.S. 362 (2000). The Court of Appeals' opinion was detailed and well reasoned. For these reasons, petitioner's claim concerning the violations of her Fifth Amendment rights is without merit.

ii.     Short-form indictment

Petitioner's third and final contention is that the "short-form" indictment does not allege first-degree murder or support first-degree murder in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. With regard to the constitutionality of North Carolina's short-form indictment, the North Carolina Supreme Court has repeatedly found the indictment sufficient to charge first-degree murder under theories of both premeditation and deliberation as well as felony murder. See State v. Hunt, 357 N.C. 257, 582 S.E.2d 593 (2003); State v. Braxton, 352 N.C. 158, 173- 75, 531 S.E.2d 428, 436-38 (2000), cert. denied, 531 U.S. 1130 (2001); State v. Wallace, 351 N.C. 481, 503-08, 528 S.E.2d 326, 341-43, cert. denied, 531 U.S. 1018, (2000).

The use of the short-form indictment has likewise been upheld by the Fourth Circuit, as well as this court. Stroud v. Polk 466 F.3d 291, 295 (4th Cir. 2006); Allen v. Lee, 366 F.3d 319 (4th Cir. 2004); Hartman v. Lee, 283 F.3d 190, 199 (4th Cir. 2002); and McNeill v. Branker, 601 F. Supp. 2d 694, 722 (E.D.N.C. 2009). Furthermore, this issue was raised on direct appeal and in the notice of appeal file in the North Carolina Supreme Court. In both instances, the claim was dismissed. The state court decision was neither contrary to, nor an unreasonable application of, clearly established federal law, thus requiring federal habeas relief. See Williams v. Taylor, 529

U.S. 362 (2000). For these reasons, petitioner's claim concerning the constitutionality of the short-form indictment is without merit.

## Certificate of Appealability

As set out above, the court has allowed summary judgment. Having so determined, the court must now consider the appropriateness of the certificate of appealability. See Rule 11 of the Rules Governing Section 2254 Cases ("Habeas Rules") ("the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.") Thus, the court reviews whether petitioner is entitled to a certificate of appealability with respect to one or more of the issues presented in her habeas petition.

A certificate of appealabilty may issue only upon a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a petitioner's constitutional claims have been adjudicated and denied on the merits by the district court, the petitioner must demonstrate reasonable jurists could debate whether the issue should have been decided differently or show the issue is adequate to deserve encouragement to proceed further. Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000).

After reviewing the claims presented in the habeas petition in light of the applicable standard, the court finds reasonable jurists would not find the court's treatment of any of petitioner's claims debatable or wrong and none of the issue are adequate to deserve encouragement to proceed further. Accordingly, a certificate of appealability is DENIED.

SO ORDERED, this 14 day of September 2010.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE